UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **DANIEL MCLEOD,**<br><br>Plaintiff,<br><br>v.<br><br>**ENNIS CENTER FOR CHILDREN, INC.,**<br><br>Defendant. | 2:24-CV-12407-TGB-KGA<br><br>HON. TERRENCE G. BERG<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION, STAY PROCEEDINGS, AND DISMISS THE CASE IN LIEU OF FILING AN ANSWER**<br>**(ECF NO. 5)** |

Ennis Center for Children, Inc. ("Ennis") moves the Court for an order compelling Daniel McLeod to arbitrate McLeod's claims against Ennis in this lawsuit. Ennis also moves the Court to stay proceedings while arbitration is ongoing, or to dismiss the case in lieu of Ennis having to file an Answer to McLeod's Complaint. After reviewing the record and the law, the Court will **DENY** Ennis' Motion to Compel Arbitration.

## I. BACKGROUND

McLeod worked for Ennis as a Foster Care Aid. ECF No. 5, PageID.32. On January 23, 2023, the same day he began his employment with Ennis, McLeod signed an agreement ("the Arbitration Agreement") providing that McLeod agreed to submit any dispute he had with Ennis to arbitration. ECF No. 5, PageID.32-33; ECF No. 10-5, PageID.134.

Ennis' representative countersigned two days later. ECF No. 5, PageID.32. The Arbitration Agreement provided that McLeod waived his rights to adjudicate claims against Ennis in a judicial forum or administrative agency. ECF No. 10-5, PageID.134.

The Arbitration Agreement McLeod signed was contained at the end of the Employee Handbook that he received during his on-boarding as a new employee. The Agreement is a single-page document bearing the title "**CONTRACT**" that is printed in the same font as the rest of Handbook. The agreement has a paragraph clearly entitled "**TERMINATION**" and "**ARBITRATION**" as well." ECF No. 5, PageID.33 (emphasis in original).

The Arbitration Agreement was located at the end of the Employee Handbook, just "before the acknowledgment page the employee signs to confirm receipt of the handbook." ECF No. 10, PageID.65; ECF No. 10-5, PageID.134-35. The Arbitration Agreement did not carry a consecutive page number at the bottom of the page, as did the other pages in the Employee Handbook. *See* ECF No. 10-5, PageID.133-34. Nor was the Arbitration Agreement in the Employee Handbook's table of contents. *See id.* at PageID.106.

The Employee Handbook contains a disclaimer advising employees that it is not the same as an employee contract, stating explicitly that the Handbook:

> is not to be considered a contract of employment between you and Ennis . . . and all of these policies are subject to change, at any time, at the sole discretion of Management. . . . [Ennis] reserves the right to amend or modify the policies, procedures, work rules or benefits stated in this manual or any other document.

*Id.* at PageID.107.

On March 18, 2024, Ennis terminated McLeod's employment with the company. ECF No. 5, PageID.33. On September 12, 2024, McLeod filed this lawsuit against Ennis, claiming that they violated his rights under the Family and Medical Leave Act. ECF No. 5, PageID.33; ECF No. 10, PageID.62.

On December 11, 2024, Ennis filed the instant Motion to Compel Arbitration. ECF No. 5. Ennis argues that because of the Arbitration Agreement McLeod signed, and the terms of the Federal Arbitration Act, this dispute must be arbitrated, not tried in this Court. *Id.* at PageID.32, PageID.34. McLeod filed a Response on January 8, 2025, ECF No. 10, and Ennis filed a Reply on January 15, 2025. ECF No. 11. McLeod also demanded a jury trial on the issue of whether this dispute should be arbitrated. *See* ECF No. 9.

## II. STANDARD

Courts reviewing motions to compel arbitration under the Federal Arbitration Act apply the same standards as Federal Civil Rule of Procedure 56 sets out for motions for summary judgment. *Boykin v. Fam.*

3

*Dollar Stores of Michigan, LLC*, 3 F.4th 832, 838 (6th Cir. 2021). "If the district court is satisfied that the agreement is not 'in issue,' it must compel arbitration." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) ("*Great Earth*"). "In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Id.* The question the Court must answer, similarly to that in a motion for summary judgment, is "whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Id.* As it does in considering a motion for summary judgment, the court reviews factual conflicts "in the light most favorable to the opposing party." *Boykin*, 3 F.4th at 840 (*citing Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014)).

In evaluating whether the parties agreed to arbitrate their disputes, the Court must apply Michigan law as it relates to the validity of contracts. *See Great Earth*, 288 F.3d at 889; *Boykin*, 3 F.4th at 839. Still, "[c]ourts are to examine the language of the contract in light of the strong federal policy in favor of arbitration . . . . [and] any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (*citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 64, 626 (1985)).

4

If the Court finds that the formation of the arbitration agreement is "in issue," the Federal Arbitration Act requires the Court to proceed to a summary trial to resolve the question. *Great Earth*, 288 F.3d at 889 (*citing* 9 U.S.C. § 4). Such a proceeding may be held before the Court, or before a jury if demanded by "the defaulting party" (in this case, McLeod, the party claiming not to be bound to arbitrate). *See* 9 U.S.C. § 4. McLeod has requested a jury trial on the question of whether a valid and enforceable agreement was made to arbitrate the claims in this lawsuit. ECF No. 9.

### III. ANALYSIS

After carefully reviewing the Arbitration Agreement, its placement in the Handbook, the language from the Handbook stating that only one party—Ennis—can unilaterally modify the Handbook's terms, and Michigan law governing arbitration agreements, the Court finds that there is a genuine dispute of material fact as to whether an arbitration contract was lawfully formed between the parties. *See Great Earth*, 288 F.3d at 889. Therefore, Ennis' Motion to Compel Arbitration must be **DENIED**.

    **A.   Michigan Courts Reject "Arbitration Contracts" Within Employee Handbooks Which Lack Mutuality**

To be valid, a contract must provide for "mutuality of obligation," among other elements. *Bank of Am., NA v. First Am. Title Ins. Co.*, 499 Mich. 74, 101 (2016). "Mutuality of obligation simply means that both

5

parties are bound to an agreement or neither is bound." *Bancorp Grp., Inc. v. Michigan Conf. of Teamsters Welfare Fund*, 231 Mich. App. 163, 171 (1998).

Issues of mutuality arise when courts are asked to enforce arbitration agreements within employee handbooks. In several cases cited by the parties, Michigan courts have refused to enforce arbitration agreements when those agreements were contained within employee handbooks which lacked mutuality, that is, where the employer reserved the unilateral right to modify any provision in those handbooks. Courts have found that where the employer "did not intend to be bound to any provision contained in the handbook . . . . the handbook [did] not create[] an enforceable arbitration agreement." *Heurtebise v. Reliable Bus. Computers*, 452 Mich. 405, 413-14 (1996); *see also Stewart v. Fairlane Cmty. Mental Health Ctr.*, 225 Mich. App. 410, 420 (1997); *Chambers v. Cath. Charities of Shiawassee & Genesee Ctys.*, No. 358103, 2022 WL 2286203, at *3 (Mich. Ct. App. June 23, 2022).

At the same time, even when employment handbooks create such nonmutual obligations, courts will nevertheless enforce arbitration agreements provided that they are set forth in documents that are separate from the handbook. *See Hicks v. EPI Printers, Inc.*, 267 Mich. App. 79, 87 (2005); *McAlindon v. Clio Golf Course, Inc.*, No. 225236, 2001 WL 1404706, at *2 (Mich. Ct. App. Nov. 9, 2001). In determining whether there is a 'stand-alone' arbitration agreement separate from the

6

employee handbook, Michigan courts have looked at whether the arbitration agreement was in a separate document, and if not, whether the agreement *appeared* to be a separate document—which appearance of separateness would support a finding that the arbitration agreement is enforceable. *Chambers*, 2022 WL 2286203 at *3; *Hicks*, 267 Mich. App. at 87; *McAlindon*, 2001 WL 1404706 at *2. Courts also look at whether the employee signed the arbitration agreement. *Stewart*, 225 Mich. App. at 421.

### B. Ennis' Employee Handbook Lacked Mutuality

The Employee Handbook provides that its material:

> is not to be considered a contract of employment between you and Ennis . . . and all of these policies are subject to change, at any time, at the sole discretion of Management. . . . [Ennis] reserves the right to amend or modify the policies, procedures, work rules or benefits stated in this manual or any other document.

*Id.* at PageID.107.

By its plain terms, the Employee Handbook lacks mutuality of obligation. Therefore, under Michigan contract law, that Employee Handbook is unenforceable for lack of mutuality. Because Ennis can amend its policies at any time, Ennis is not bound to what the Employee Handbook contains. And because both parties are not mutually bound to its terms, neither is bound. *See Bancorp Grp., Inc.*, 231 Mich. App. at 171.

7

Thus, if the Arbitration Agreement is a part or the Employee Handbook, it too cannot be enforced.

### C. There is a Genuine Dispute of Material Fact over Whether the Arbitration Agreement 'Stands Alone' From the Employee Handbook

The question for the Court in resolving this Motion is whether a reasonable factfinder, viewing facts in the light most favorable to the nonmoving party, could find that an agreement to arbitrate was not properly formed. *See Great Earth*, 288 F.3d at 889; *Boykin*, 3 F.4th at 840.

Because the Employee Handbook lacks mutuality, its content does not bind Ennis or McLeod. Ennis argues that the Arbitration Agreement should not be construed as being part of the Employee Handbook, while McLeod argues the opposite. Based on the record before the Court, there is a genuine dispute of material fact as to whether the Arbitration Agreement is part of the Employee Handbook.

Ennis points to the facts that the Arbitration Agreement McLeod signed was titled as a "Contract." ECF No. 10-5, PageID.134. In that Contract, paragraphs are clearly labeled: "'**TERMINATION**' and '**ARBITRATION**' are bolded and in all caps . . . ." ECF No. 5, PageID.33 (emphasis in original). Additionally, Ennis notes that the one-page Arbitration Agreement did not have its own consecutively-numbered page number at the bottom of the page, as did the preceding pages in the Employee Handbook. *See* ECF No. 10-5, PageID.133-34. Nor is the

8

Arbitration Agreement listed as an item in the Employee Handbook's table of contents. *See id.* at PageID.106. Ennis also argues that the formatting of the Arbitration Agreement is different from that of the Employee Handbook. ECF No. 11, PageID.147-49. Finally, there is no dispute that McLeod *signed* the Arbitration Agreement in the Handbook. ECF No. 5, PageID.32. Ennis argues that in light of this evidence, "any disclaimer in the [Employee] Handbook" does not apply to the Arbitration Agreement, that the Arbitration Agreement stands alone, and "is a valid binding contract." ECF No. 11, PageID.149.

In response, McLeod point out that the Arbitration Agreement was attached to the Employee Handbook, and that the font used for the heading **"Contract"** at the top of the Arbitration Agreement appears to be the same as the font used for the other headings used throughout the Handbook. ECF No. 10, PageID.65-66; *see, e.g.*, ECF No. 10-5, PageID.134, PageID.129.

> Moreover:
>> The purported arbitration agreement is located at the second to last page of the employee handbook, and before the acknowledgment page the employee signs to confirm receipt of the handbook. It is therefore positioned and located *within* the handbook itself.

ECF No. 10, PageID.65 (emphasis in original, internal citations omitted); ECF No. 10-5, PageID.134-35.

9

McLeod's point here is correct: the page immediately following the Arbitration Agreement in the Handbook is the "Employee Handbook Receipt," which is to be signed by the employee as an acknowledgement that they "have received a copy of [Ennis's] Employee Handbook . . . ." ECF No. 10-5, PageID.135.

Applying the summary judgment standard, if a reasonable factfinder could conclude that the Arbitration Agreement was *not* a 'stand-alone' document from the nonmutual Employee Handbook, summary judgment must be denied. While the Arbitration Agreement appears slightly different from the Employee Handbook, lacked consecutive numbering, and was signed by McLeod, it was attached to, *and apparently within*, the Employee Handbook itself. As the record appears at this stage, the Employee Handbook Receipt *follows* directly after the Arbitration Agreement *in the same document*. Viewing how the Receipt *for the Handbook* directly followed the Arbitration Agreement, a reasonable factfinder could infer that the Agreement was part of the Employee Handbook, and therefore that the provisions of the Handbook—including Ennis' unilateral authority to modify its terms—applied to the Arbitration Agreement, too. If the Receipt were placed at the end of the Handbook but *before* the Arbitration Agreement, the opposite inference would arise.

Courts look to whether the arbitration agreement *appears* to be part of the non-mutual employment handbook. Because of how the

10

Arbitration Agreement was allegedly presented to McLeod, a reasonable factfinder could find that the Arbitration Agreement appeared to be part of the Employment Handbook and therefore is non-binding and unenforceable.

Ennis could respond that this is an "ambiguity" in the intent of the parties, which must be resolved in favor of arbitration. *See Stout*, 228 F.3d 714. But that rule must coexist with (1) this Court's obligation to apply Michigan law, and (2) this Court's obligation to apply the summary judgment standard here. Michigan law, which governs the interpretation of this alleged contract, demonstrates that arbitration agreements are unenforceable when presented as being part of non-mutual employment handbooks. *See Boykin*, 3 F.4th at 839; *Heurtebise*, 452 Mich. at 413.

And the summary judgment standard in motions to compel such as this allows the Court to deny motions to compel if "a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Great Earth*, 288 F.3d at 889. Moreover, the Court must "review factual conflicts in the light most favorable to the opposing party." *Boykin*, 3 F.4th at 840 (citations omitted). Here, McLeod is the opposing party. While there may be some ambiguity in the parties' intent, and Ennis' argument to this effect may yet prevail after a hearing, a reasonable finder of fact could also conclude from the Arbitration Agreement's placement that no valid agreement to arbitrate exists. Therefore, the Court is within its discretion to deny Ennis' Motion to Compel.

11

### D. Next Steps

Having denied Ennis' Motion to Compel Arbitration, the Court must apply the statute and relevant caselaw to resolve the issue of whether the claims in this lawsuit must be arbitrated. 9 U.S.C. Section 4 of the FAA provides that if the Court determines that the making of an arbitration agreement is in issue, "the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such issue." 9 U.S.C. § 4. Here, McLeod is the party alleged to be in default of the agreement to arbitrate. McLeod has previously requested a jury trial on this issue, ECF No. 9, but could still waive that right and elect to proceed with a summary bench trial.

While there are certain cases in which the Court may determine, as a matter of law, that the parties did *not* agree to arbitrate, (which if true would mean that the Court would not need to proceed to a § 4 trial), this is not such a case. *See Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014); *Jin v. Parsons Corp.*, 966 F.3d 821, 826-27 (D.C. Cir. 2020). When the terms of a contract are contested, as they are here, the factfinder must determine the actual terms of the contract. *See Linsell v. Applied Handling, Inc.*, 266 Mich. App. 1, 12 (2005). So this matter appears unfit for resolution as a matter of law. Here, there is a genuine dispute of material fact: a reasonable factfinder might conclude from the record that McLeod *did or did not* agree to arbitrate all disputes with

Ennis. When there are disputed fact issues on whether the parties agreed to arbitrate, the Court must proceed summarily to trial. *Boykin*, 3 F.4th at 844.

For this trial, the Court will permit only "targeted discovery on the disputed contract-formation questions." *Id.* "[A]ny discovery must comport with § 4, which 'calls for a *summary trial*—not death by discovery.'" *Boykin*, 3 F.4th at 844 (emphasis in original, *quoting Howard*, 748 F.3d at 978). Examples of questions fit for discovery might include whether the copy of the Employee Handbook that McLeod received and signed included the Arbitration Agreement, and whether the receipt page of the Handbook followed the Agreement.

### IV. CONCLUSION

For the reasons stated above, Ennis' Motion to Compel, ECF No. 5, is **DENIED**. Ennis and McLeod are **ORDERED** to appear at a telephonic status conference with the Court to discuss next steps on August 27, 2025 at 11:30 a.m.

**SO ORDERED.**

Dated: August 4, 2025    /s/Terrence G. Berg
                         HON. TERRENCE G. BERG
                         UNITED STATES DISTRICT JUDGE